IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HYATT CORPORATION, dba HYATT REGENCY WAIKIKI BEACH RESORT AND SPA,<br><br>    Petitioner,<br><br>    vs.<br><br>UNITE HERE LOCAL 5,<br><br>    Respondent.<br>_____ | CIVIL NO. 11-00645 JMS/KSC<br><br>ORDER (1) GRANTING RESPONDENT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(5), & 12(B)(6), DOC. NO. 5; (2) DENYING AS MOOT PETITIONER'S MOTION TO CONFIRM PORTIONS AND TO MODIFY, OR VACATE PORTIONS OF THE ARBITRATION AWARD DATED JULY 27, 2011, DOC. NO. 1; AND (3) DENYING RESPONDENT'S MOTION TO COMPEL ARBITRATION, DOC. NO. 16 |

**ORDER (1) GRANTING RESPONDENT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(5), & 12(B)(6), DOC. NO. 5; (2) DENYING AS MOOT PETITIONER'S MOTION TO CONFIRM PORTIONS AND TO MODIFY, OR VACATE PORTIONS OF THE ARBITRATION AWARD DATED JULY 27, 2011, DOC. NO. 1; AND (3) DENYING RESPONDENT'S MOTION TO COMPEL ARBITRATION, DOC. NO. 16**

## I. INTRODUCTION

This dispute stems from an arbitration proceeding between Hyatt

Corporation, dba Hyatt Regency Waikiki Beach Resort and Spa ("Hyatt") and

Unite Here Local 5 (the "Union") in which the Union asserted that Hyatt violated

the parties' Collective Bargaining Agreement (the "CBA" or the "Agreement") by subcontracting work normally carried out by bargaining-unit employees.  On July 27, 2011, Arbitrator John Kagel issued his decision (the "July 27 Decision") finding that Hyatt violated the CBA by hiring non-bargaining unit employees to perform non-renovation, non-woodwork general painting after laying off three bargaining-unit employees.  The July 27 Decision required Hyatt to pay a $22,500 penalty to the A.F.L. Hotel and Restaurant Workers Trust Fund, remanded the issue of monetary damages to the parties to attempt to settle in the first instance, and retained jurisdiction to the extent the parties could not reach agreement.

On October 24, 2011, Hyatt commenced this action by filing a Motion to Confirm Portions and to Modify, or Vacate Portions of the July 27, 2011 Arbitration Award.  In response, the Union filed a Motion to Dismiss and a Motion to Compel Arbitration.  Based on the following, the court finds that the July 27 Decision is not a final and complete arbitration award subject to judicial review. As a result, the court GRANTS the Union's Motion to Dismiss, DENIES as moot Hyatt's Motion to Confirm Portions and to Modify or Vacate Portions of the July 27 Decision, and DENIES the Union's Motion to Compel.

## II. **BACKGROUND**

### A.     **Factual Background**

The CBA, effective from July 1, 2006 through June 30, 2010, *see*

Doc. No. 1-9, Pet'r Ex. 8 ¶ 2.01, outlines various rules regarding the circumstances

under which Hyatt may hire subcontractors to perform work that might potentially

be performed by bargaining-unit employees.  On February 10, 2009, March 20,

2009, and August 27, 2010, the Union filed grievances asserting in conclusory

fashion that Hyatt had subcontracted work in violation of the CBA.  *See* Doc. Nos.

1-3-1-5, Pet'r Exs. 2-4.  These grievances ultimately proceeded to arbitration.

Because the grievances did not describe the alleged violations in any

detail, prior to the arbitration hearing Hyatt made several requests that Arbitrator

Kagel order the Union to more particularly describe the alleged violations.  *See,*

*e.g.*, Doc. Nos. 1-6-1-7, Pet'r Exs. 5-6.  In response, Arbitrator Kagel ordered that

(1) the Union shall present its case first so that Hyatt would know the claims that

must be addressed; (2) the Union has the burden to prove that the work of Union

members was subcontracted to others; (3) the Union must "ASAP" describe in

reasonable detail the dates, type and amount of alleged work that the Union claims

was improperly subcontracted; and (4) the Union must disclose its witnesses to

Hyatt.  Doc. Nos. 1-6-1-7, Pet'r Exs. 5-6.  As to Hyatt's request that "the Union

3

must state [the] amount of damages claimed for such piece of alleged union work,"
however, Arbitrator Kagel ruled "not necessary yet; can find 'liability' first.  If still
necessary."  Doc. No. 1-6, Pet'r Ex. 5.

At the start of the two-day hearing, Arbitrator Kagel again expressed
his position that he would first determine whether Hyatt violated the CBA, and if
so, then allow the parties to discuss settlement on their own before he fashioned a
remedy:

> Arbitrator Kagel:  Further, if I find remedy is due or any
> remedy issues that are not presented in this matter in the
> next two days, that I can remand those to the parties and
> retain jurisdiction if there's any dispute.  Correct?
>
> Mr. Hiatt [Hyatt]:  Our position on that respectfully is
> they should make their remedy claims in this proceeding
> so we don't have another one and we would be entitled to
> examine and cross-examine on that.
>
> Arbitrator Kagel:  I hear your position.  I'm going to do
> what I just said.
>
> Mr. Hiatt [Hyatt]: Okay.

*Id.* at 11-12.

The parties further affirmed that Arbitrator Kagel had authority to
"determine what the issue is within the parameters of those given to [him] by the
parties" at the conclusion of briefing.  Doc. No. 1-8, Pet'r Ex. 7, Arb. Tr. at 11.
The Union framed the issue as, "Has the Employer violated the Collective

Bargaining Agreement by subcontracting work that normally would be performed by Bargaining Unit employees in the Maintenance Department; and if so, what shall the remedy be?" Doc. No. 1-2, Pet'r Ex. 1, Jul. 27 Decision at 1. In comparison, Hyatt framed the issue as "whether the grievances should by sustained or denied; and if sustained, what should be the remedy?" *Id.* at 2.

After a two-day hearing, Arbitrator Kagel issued his July 27 Decision. The July 27 Decision found that although several of the Union's assertions that Hyatt violated the CBA were too vague or not detailed enough for Hyatt to respond to, the Union presented "substantial enough discussion" to flush out allegations directed toward hiring of non-bargaining unit employees to perform corridor renovation, teak furniture refinishing, and non-renovation painting. *Id.* at 17.

As to corridor renovation, the July 27 Decision explained that Hyatt hired non-bargaining unit employees for a $5,000,000 multi-month project involving stripping and refinishing all walls, doors, floors, and ceilings, replacing mirror, lighting, and floor coverings, and refinishing tile work of seventy tower corridors. *Id.* The July 27 Decision found that Hyatt could properly use contractors for this work pursuant to § 53.9 of the CBA, which allows Hyatt to hire contractors where "a construction contract exceeds $2000 and involves renovation and painting." *Id.* at 17-18.

5

The July 27 Decision also rejected the Union's allegations that Hyatt violated the CBA by hiring contractors to perform teak furniture refinishing.  The July 27 Decision explained that Hyatt's use of a subcontractor did not violate the CBA because in-house painters could not keep up with this refinishing even before Hyatt increased its inventory, the subcontractor used specialized equipment that Hyatt did not own, there was no evidence that bargaining unit hours were reduced as a result of the subcontracting, and the Union did not file a grievance when the work began and continued on a regular basis as required by the CBA.  *Id.* at 18-19.

As to general painting, the July 27 Decision explained that Hyatt had laid off four maintenance workers in late 2008 (one employee was allowed to remain in the maintenance department), who had routinely painted walls, doors, and planters, varnished railings, touched up ceilings, and did drywall repairs.  *Id.* at 4, 19.  After the layoffs, subcontractors performed this work.  The July 27 Decision found that this subcontracting violated § 6.03A of the CBA prohibiting Hyatt from subcontracting "to reduce work hours normally performed by employees in the bargaining unit."  *Id.* at 20.

As for the remedy, the Union sought, among other things, monetary penalties outlined in § 6.03E of the CBA,[1] and either "a per capita payout of an

---

[1]  Section 6.03E of the CBA provides:

(continued...)

equivalent hourly rate for each hour the subcontracting violated the [CBA]," or

"payments to the laid off Maintenance employees, less any severance they received

plus reinstatement."  *Id.* at 22.  The July 27 Decision found that "the most

violations that can be found are three, given three grievances," such that under

§ 6.03E Hyatt must pay $22,500 ($7,500 for the second violation and $15,000 for

the third violation) to the A.F.L. Hotel and Restaurant Workers Trust Fund.

The July 27 Decision further found that Hyatt may be liable for

compensatory damages and that the parties should meet in the first instance in an

attempt to resolve the issue:

> With respect to monetary remedies, the Arbitrator
> was not only given the authority to decide what the issues
> are in this case, but also the authority to remand remedy
> issues to the Partie[]s and retain jurisdiction if any
> dispute remains.  The Employer had sought to conclude
> the hearing in one sitting and also sought entitlement to
> examine and cross-examine witnesses with respect to
> remedy.  (tr. 11-12)  Given the nature of this case, as it
> eventually unfolded, subcontracting violations did occur
> after the layoffs that were covered by the grievances.

---

[1](...continued)

If the Employer is found to have violated Section 6.3 in any two-year period then the employer shall pay a penalty pursuant to subsection 6.3(B)(1) in accordance with the following schedule:

| Violation | Penalty |
|-----------|---------|
| 2nd | $7,500 |
| 3rd | $15,000 |
| 4th | $20,000 |

Pet'r Ex. 8, CBA ¶ 6.03E.

The invoices from the subcontractors are not fully clear as to the scope of work performed, nor their monetary worth in calculating Agreement compliance.

Nonetheless, there cannot be an Agreement violation without a remedy, and it is not apparent that the penalty provisions of section 6.03.E are the exclusive means of resolving Section 6.03 violations. . . .

Accordingly, while partial remedies for the found violations of Section 6.03 will be mandated below, remaining issues necessarily are required to be further considered by the Parties, and if that fails, further arbitration proceedings can be held on the limited issues of the amounts due for the violations, if any, and the distribution of any amounts found to be due.

*Id.* at 23-24.

Under the section labeled "Decision," the July 27 Decision reiterates

the remedies as follows:

5.    The Employer shall forthwith pay $22,500.00 to the A.F.L. Hotel and Restaurant Workers Trust Fund.

6.    The computation of the amounts due for the above violations of Section 6.03 after the layoff of three Bargaining Unit Maintenance employees, but no earlier than 60 days before the filing of grievance 09-097, if any, and the method of distribution of such amounts, if any, is remanded to the Parties, the Arbitrator retaining jurisdiction with respect to issues limited to the amounts due for the violations, if any, and how distribution of any amounts, if any, found to be due shall be made.  If such proceedings are found to be necessary, both Parties will have the opportunity [to] present evidence and to examine and cross-examine witnesses.

8

*Id.* at 25.

After the July 27 Decision, Hyatt paid $22,500 to the A.F.L. Hotel and Restaurant Workers Trust Fund, yet objected to Arbitrator Kagel's retention of jurisdiction over the computation of any additional amounts due.  *See* Pet'r Ex. 9; Doc. No. 16-6, Resp't Ex. 4.  The proceedings before this court followed.

## B.     Procedural Background

On October 24, 2011, Hyatt filed its Motion to Confirm Portions and to Modify, or Vacate Portions of the July 27 Decision.  Hyatt's Motion seeks to confirm the portions of the July 27 Decision regarding liability and the $22,500 penalty, and seeks to vacate the portions of the July 27 Decision suggesting that a monetary remedy in addition to the $22,500 penalty is possible and retaining jurisdiction over any remaining disputes.

On November 1, 2011, the Union filed its Motion to Dismiss, arguing that the court cannot confirm and/or modify any portions of the July 27 Decision because it is not a final decision by Arbitrator Kagel, and that Hyatt's arguments as to why Arbitrator Kagel exceeded his authority are premature and baseless.[2]  On January 10, 2012, the Union filed its Motion to Compel Arbitration, reiterating its

---

[2]  The Union also argued that this action should be dismissed for insufficient service of process.  Service was subsequently effected and the Union withdrew this argument.  *See* Doc. No. 21, Resp't Consol. Reply at 3 n.1.

9

arguments that Hyatt's arguments as to why Arbitrator Kagel exceeded his

authority are premature and baseless.  Hyatt filed its Oppositions to the Union's

Motions on January 17, 2012, and Replies were filed on January 30, 2012.  A

hearing was held on February 27, 2012.

## III. <u>DISCUSSION</u>

### A.    The Union's Motion to Dismiss

The Union argues that the court must dismiss Hyatt's Petition because

the July 27 Decision is not a final decision subject to judicial review.[3]  Based on

the following, the court agrees.

In general, the court may not review an arbitration decision under

§ 301 of the  Labor Management Relations Act ("LMRA") unless it is a final and

binding arbitration award.  *See Orion Pictures Corp. v. Writers Guild of Am., W.,*

*Inc.*, 946 F.2d 722, 724 (9th Cir. 1991) ("Generally a district court may review an

arbitrator's rulings pursuant to section 301 of the LMRA only after there is a final

award."); *Sheet Metal Workers' Int'l Ass'n, Local 206, of Sheet Metal Workers'*

---

[3]  In its Motion to Dismiss, the Union frames the issue as raising the court's jurisdiction. *See* Doc. No. 5-1, Resp't Mot. to Dismiss at 8.  At the February 27, 2012 hearing, however, the Union asserted that it is a prudential issue given that a court may review non-final arbitration awards in "extreme cases."  *See Millmen Local 550, United Broth. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987).  Whether the complete arbitration rule is jurisdictional or prudential "is unimportant, since the issue for determination on appeal is the same however one may characterize that rule."  *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Machine Workers Local 610*, 900 F.2d 608, 611-12 (3d Cir. 1990).

*Int'l Ass'n, AFL-CIO v. R.K. Burner Sheet Metal Inc.*, 859 F.2d 758, 760 (9th Cir. 1988) ("In general, a district court should only confirm a final and binding arbitration award."); *Millmen Local 550*, *United Broth. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987).  This rules exists for sound reasons:

> To allow judicial intervention prior to the final award would contravene the fundamental federal labor policy of deference to contractual dispute resolution procedures, and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense of court proceedings.  Moreover, interlocutory review of nonfinal arbitration awards would defeat the purpose of 28 U.S.C. § 1291 (1982) to avoid piecemeal litigation of a claim.

*Millmen Local 550*, 828 F.2d at 1375 (citations omitted); *see also Bensalem Maint., Ltd. v. Metro. Reg. Council of Carpenters*, 2011 WL 2633154, at *7 (E.D. Pa. July 5, 2011) (stating that the purposes of the final arbitration rule are "(1) to avoid 'piecemeal' or 'fragmented' litigation, and (2) to allow the parties to attempt to work out their remaining differences after a partial resolution") (citing *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Machine Workers Local 610*, 900 F.2d 608, 611 (3d Cir. 1990)).

An arbitrator's decision is "final and binding" where the decision is "intended by the arbitrator to be a complete determination of the claims, including

11

the issue of damages." *Millmen Local 550*, 828 F.2d at 1376 (discussing *Michaels v. Mariforum Shipping*, 624 F.2d 411, 413-14 (2d Cir. 1980)).  In other words, "an arbitration award that postpones the determination of a remedy should not constitute a 'final and binding award' reviewable under section 301."  *Id.* (collecting and discussing cases); *see also Union Switch*, 900 F.2d at 611.  Indeed, where the arbitrator "specifically retain[s] jurisdiction to decide the remedy if the parties could not agree indicates that the arbitrator did not intend the award to be final."[4]  *Millmen Local 550*, 828 F.2d at 1376-77; *see also Orion Pictures Corp.*, 946 F.2d at 724; *Compare with McKinney Restoration Co. v. Ill. Dist. Council No. 1 of the Int'l Union of Bricklayers & Allied Craftworkers, AFL-CIO*, 392 F.3d 867, 871 (7th Cir. 2004) (emphasizing the principle that "if the arbitrator himself thinks he's through with the case, then his award is final and appealable" (quotations omitted)).

The Third Circuit has explained that arbitrators regularly defer determining remedies to avoid the expense of arbitration, and that this device

---

[4] In comparison,"where all that remains in terms of the remedy is a computation of the amount of damages, such outstanding issues are typically described as 'ministerial' and, likewise, does not render the award non-final."  *Bensalem Park Maint., Ltd. v. Metro. Reg. Council of Carpenters*, 2011 WL 2633154, at *5 (E.D. Pa. July 5, 2011); *see also Millmen Local 550*, 828 F.2d at 1377 (explaining that "the arbitrator need not complete the mathematical computations of the award for the award to be final and reviewable" (citing *United Steelworkers v. Enter/ Wheel & Car Corp.*, 363 U.S. 593 (1960)).

would be defeated if the parties could in the meantime seek relief from the courts:

> The large number of cases presenting arbitration awards
> that defer determination of the remedy indicates that this
> is a common practice among arbitrators. *See, e.g.,*
> *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d
> 1289 (9th Cir. 1987); *Hughes Aircraft v. Elec. & Space*
> *Tech.*, 822 F.2d 823 (9th Cir. 1987); *Locals 2222, 2320,*
> *2327, etc. v. New England Telephone & Telegraph Co.*,
> 628 F.2d 644 (1st Cir. 1980); *Hart v. Overseas Nat'l*
> *Airways, Inc.*, 541 F.2d 386 (3d Cir. 1976); and the cases
> discussed above. In principle, there is nothing wrong
> with this practice. It is entirely reasonable for an
> arbitrator to "call time out" during an arbitration in the
> hope that a partial resolution will inspire the parties to
> work out their remaining differences on their own,
> thereby avoiding the time and expense of additional
> arbitration. But we must take care to ensure that parties
> do not use these "time outs" as an opportunity to rush to
> court, either to preserve what they have just won, or
> (more often) to forestall a process that is not turning out
> as they might have wished. If this is allowed, the
> arbitrator's time will only be spared, if at all, at the great
> expense of vastly prolonged and unnecessary litigation,
> which is of course precisely what arbitration exists to
> avoid.

*Union Switch*, 900 F.2d at 611.

Applying these principles, the court concludes that the July 27

Decision was not a complete determination of the issues presented by the parties --

although it determined the penalty under the CBA, it left completely unanswered

the issue of monetary damages. Specifically, the July 27 Decision remanded to the

parties to determine "the computation of the amounts due for the above violations

of Section 6.03 after the layoff of three Bargaining Unit Maintenance employees, but no earlier than 60 days before the filing of grievance 09-097, if any, and the method of distribution of such amounts." Doc. No. 1-2, Pet'r Ex. 1, July 27 Dec. at 25. Arbitrator Kagel further retained jurisdiction "with respect to issues limited to the amounts due for the violations, if any, and how distribution of any amounts, if any, found to be due shall be made." *Id.* This remaining task of determining damages was not ministerial -- the Union was seeking *either* "a per capita payout of an equivalent hourly rate for each hour the subcontracting violated the [CBA]," or "payments to the laid off Maintenance employees, less any severance they received plus reinstatement," *id.* at 22, and invoices from the subcontractors were not clear regarding scope of the work performed or their monetary worth. As a result, the July 27 Decision contemplated that if the parties could not reach an agreement, further arbitration proceedings may be necessary, where both parties would present evidence and examine and cross-examine witnesses. In short, the July 27 Decision was not final.

In opposition, Hyatt argues that the court should follow *International Brotherhood of Electrical Workers, Local Union No. 124 v. Alpha Electric Co.*, , 1420 (W.D. Mo. 1991), which found that the arbitration award at issue was final despite its recitation that the arbitration committee retained jurisdiction "for

purposes of resolving issues which may arise concerning the remedy."

*Alpha Electric* is neither controlling nor persuasive.  The award at issue in *Alpha Electric* provided that the employer is "ordered to make any bargaining unit employee who lost work as a result of [the employer's] violations whole for all economic losses suffered as a result of these violations, and to make all fringe payments required by the inside labor agreement for all hours of such lost work." *Id.* at 1420.  *Alpha Electric* found that the award was final because it specified a "make-whole remedy" and its details "do not need to be provided in order for an arbitration award to be final."  *Id.* at 1421.  Unlike *Alpha Electric*, the July 27 Decision did not specify a "make-whole remedy," and indeed left completely open the determination of compensatory damages (if any) for the parties to address in the first instance.  *Alpha Electric* therefore does not suggest a different result in this action.

Hyatt further argues that the July 27 Decision is a final decision because the CBA does not allow Arbitrator Kagel to retain jurisdiction of the matter after issuing the July 27 Decision.  Doc. No. 19, Pet'r Opp'n at 14. Specifically, Hyatt explained at the February 27, 2012 hearing that the CBA requires Arbitrator Kagel to issue a full decision within 30 days of the hearing, and as a result, the July 27 Decision must be a final decision because he cannot

15

maintain jurisdiction over any remaining remedy issues.  The court rejects this argument.

Whether Arbitrator Kagel was required to issue his entire decision addressing both liability and remedy in the July 27 Decision is precisely the type of procedural question for Arbitrator Kagel to decide.  "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.'"  *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964); *see also Local Union No. 370 of Int'l. Union of Operating Engineers v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir. 1986) ("Once a court determines that the parties agreed to arbitrate a dispute, then that dispute must be submitted to the arbitrator.").  The time limitation for Arbitrator Kagel to render a decision on all disputed matters is for him to determine in the first instance -- "limitations on the time in which an arbitrator may render an award are procedural not jurisdictional."[5]  *McKesson Corp. v. Local 150*

---

[5] Further, to the extent Hyatt argues that the CBA does not allow Arbitrator Kagel to award damages above and beyond the penalties provided in § 6.03E of the CBA, the parties specifically submitted the issue of the appropriate remedy to Arbitrator Kagel and it is for him to decide in the first instance what remedies are appropriate. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 45 (1st Cir. 2006) ("[W]hen there is ambiguity about the scope of a remedies limitation of an arbitration agreement, the arbitrator will decide the question of enforceability in the first instance."); *see also Sunoco, Inc. v. Honeywell Int'l, Inc.*, 2005 WL 2559673, at *3 (S.D.N.Y. Oct. 13, 2005) ("Having chosen to submit that issue to the arbitrator, the proper mechanism for

(continued...)

*IBT*, 969 F.2d 831, 834 (9th Cir. 1992) (collecting cases); *see also Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 644 (9th Cir. 2010) ("The question of the time frame within which an arbitration panel may issue an award is a procedural matter.").

The July 27 Decision makes clear that Arbitrator Kagel believed that issues remained between the parties and that he may need to address those issues if the parties could not reach agreement.  Although Hyatt disagrees with this procedure, "[a]n arbitrator's ruling is not final if there is a substantive task left for the arbitrator to perform in the proceeding, even if not all of the parties agree that such further action is warranted."  *Orion Pictures Corp.*, 946 F.2d at 725.  The court therefore GRANTS the Union's Motion to Dismiss.

## B.     The Parties' Remaining Motions

As a result of the court's finding that the July 27 Decision is not a final and complete arbitration award, the court DENIES as moot Hyatt's Motion to Confirm and to Modify, or Vacate Portions of the July 27 Decision.

As to the Union's Motion to Compel, such Motion (as well as the Union's cross-claim) is inconsistent with the Union's argument, accepted by the

---

[5](...continued)
any attack on the arbitrator's decision on the issue is through its cause of action to vacate a final award, and not through an application for injunctive relief to prevent a final award from being entered.").

court, that the court cannot review the July 27 Decision. Indeed, on the one hand the Union recognizes that "Hyatt's various arguments for why this Court should second-guess the arbitrator are not ripe," Doc. No. 5-1, Resp't Mot. to Dismiss at 13, yet on the other hand proceeds to address these very arguments for the court's consideration. Because the July 27 Decision is not a final and complete arbitration award, the court does not opine on arguments that should be made before Arbitrator Kagel to determine in the first instance. The court therefore DENIES the Union's Motion to Compel.[6]

Finally, the court recognizes that within its Motion to Compel, the Union also makes a request for attorneys' fees. "[T]he award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration or appeals from an order compelling arbitration." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir. 1984). Although the court ultimately rejected Hyatt's arguments against dismissal of this action, the court finds that Hyatt's Motion to Confirm Portions and to Modify or Vacate Portions of the July 27 Decision was not brought in bad faith. Instead, Hyatt made a good

---

[6] At the February 27, 2012 hearing, the Union explicitly agreed that Hyatt's participation in further arbitration would not waive any arguments by Hyatt that Arbitrator Kagel cannot issue any additional remedies. Further, given the court's familiarity with the issues in this matter and by agreement of the parties, if either party later seeks to confirm and/or vacate a final arbitration decision by Arbitrator Kagel, that party should notify the Clerk's Office that such action be assigned to the undersigned.

18

faith effort -- ultimately, without success -- to distinguish the finality rule in this case.  The court therefore DENIES the Union's request for attorneys' fees.

## IV.  <u>CONCLUSION</u>

Based on the above, the court GRANTS the Union's Motion to Dismiss, DENIES as moot Hyatt's Motion to Confirm Portions and to Modify or Vacate Portions of the July 27 Decision, DENIES the Union's Motion to Compel, and DENIES the Union's fee request.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 28, 2012.



/s/ J. Michael Seabright

J. Michael Seabright
United States District Judge


*Hyatt Corp., dba Hyatt Regency Waikiki Beach Resort and Spa v. Unite Here Local 5*, Civ. No. 11-00645 JMS/KSC, Order (1) Granting Respondent's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), & 12(b)(6), Doc. No. 5; (2) Denying as Moot Petitioner's Motion to Confirm Portions and to Modify, or Vacate Portions of the Arbitration Award Dated July 27, 2011, Doc. No. 1; and (3) Denying Respondent's Motion to Compel Arbitration, Doc. No. 16